UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENI MAE MEYER,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SONOMA, et al.,<br><br>        Defendants. | Case No. 24-cv-09056-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Pending before the Court is Defendants' motion to dismiss.[1] Dkt. No. 18. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

### I.    REQUEST FOR JUDICIAL NOTICE

Defendants have filed requests for judicial notice in support of their motion to dismiss. *See* Dkt. No. 19. Specifically, Defendants ask the Court to take judicial notice of various court filings discussed in more detail below. *Id.* The Court **GRANTS** Defendants' requests and takes judicial notice of (1) the fact that these cases and documents were filed, and (2) of any judicial findings contained in them. *See* Fed. R. Evid. 201(b) (allowing judicial notice of facts "not subject to reasonable dispute" that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"); *see also United States ex rel. Robinson Rancheria Citizens*

---

[1] Defendants include the County of Sonoma, as well as County employees Tennis Wick, Tyra Harrington, Todd Hoffman, Ryan Sharp, Jesse Cablk, and Cris Martinez. *See* Dkt. No. 1 ("Compl.") at ¶¶ 3–9.

1  *Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (explaining that courts "may take notice of
2  proceedings in other courts, both within and without the federal judicial system, if those
3  proceedings have a direct relation to matters at issue").

## II.   BACKGROUND

Plaintiff Keni Mae Meyer initially filed this case in December 2024.  *See* Compl.  Plaintiff appears to be challenging, at least in part, Sonoma County's policies regarding the use of drones for aerial surveillance of private property.  *See, e.g.*, Compl. at ¶¶ 56–72, 74, 88–89, 92.  But Plaintiff's issues with the County began in early 2019 when the County issued multiple Sonoma County Code violations for Plaintiff's property in Sebastopol.  *See id.* at ¶¶ 75–91.  Plaintiff alleges that she attempted to negotiate a resolution with the County regarding these violations, and reached a deal that the County later rejected.  *See id.* at ¶¶ 87–91.  During this time, in approximately March 2020, Plaintiff alleges that the County first flew a drone over Plaintiff's property without her consent and without a warrant.  *See id.* at ¶¶ 88–89.  In February 2021, the County filed a complaint in state court against Plaintiff for failing to abate the code violations, and the County obtained a judgment against Plaintiff in March 2022.  *See id.* at ¶¶ 87–88, 90–91; *see also* Dkt. No. 19, Exs. 2–3 at 21–49.  In addition to directing Plaintiff to abate the violations, the court awarded the County $377,660.00 in civil penalties.  *See* Dkt. No. 19, Ex. 3 at 48.  Plaintiff alleges that after obtaining this judgment, the County continued to surveil her property with drones and without a warrant.  *See* Compl. at ¶ 92.  She alleges, for example, that the most recent surveillance by drone occurred on March 23, 2023.  *See id.*  She further alleges that on February 14, 2024, Defendant Cris Martinez, an officer with Sonoma County's Animal Services, drove onto her property without her permission by following a guest through the gate onto her property.  *Id.* at ¶¶ 9, 93–94.  Plaintiff alleges that Defendant Martinez "badgered and harassed" her and refused to leave the property.  *Id.* at ¶ 94.

Based on these allegations, Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment's prohibition of unreasonable searches and seizures, the Eighth and Fourteenth Amendment's prohibition of excessive fines, and for municipal liability under *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978); for violations of

1  California's right to privacy under Article I, Section 1 of the California Constitution; as well as

2  common law claims for trespass and intentional infliction of emotional distress. *See id.* at ¶¶ 95–

3  143. Defendants have moved to dismiss the complaint. Dkt. No. 18.

**III.   LEGAL STANDARD**

   **A.   Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject matter jurisdiction exists." *See Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975, n.12 (9th Cir. 2012) (quotation omitted). The party invoking subject matter jurisdiction has the burden of establishing that such jurisdiction exists. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

   **B.   Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*,

3

1   266 F.3d 979, 988 (9th Cir. 2001)).

**IV.   DISCUSSION**

At the time Plaintiff filed the complaint, she was represented by Young Law Group.  The parties appear to agree that Plaintiff's complaint in large part tracks the complaint in a separate case filed by the same counsel, *Cupp v. County of Sonoma*, Case No. 23-cv-01007-JST (N.D. Cal.).  After Defendants filed their motion to dismiss, Plaintiff retained new counsel, Franck & Associates, who responded to the motion.  *See* Dkt. No. 23.  In the opposition to the motion to dismiss, Plaintiff's new counsel acknowledges that Judge Tigar dismissed many of the same claims in the *Cupp* case.  *See* Dkt. No. 25 at 1–4.  Counsel appears to suggest that the Court should follow much of Judge Tigar's prior order here too.  *Id.* ("Plaintiff requests this Court to follow the *Cupp* decision . . . .").  The Court finds counsel's position questionable, since Judge Tigar dismissed many of the claims in the *Cupp* case.  In any event, the Court does not rest on the nonbinding decision in *Cupp*, and addresses the parties' arguments below.

**A.   *Rooker-Feldman* Doctrine**

As an initial matter, Defendants argue in cursory fashion that the Court lacks subject matter jurisdiction over this case because Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.  *See* Dkt. No. 18 at 21–22.

Under the *Rooker-Feldman* doctrine, a federal district court has no authority to review state court decisions.  *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923).  The doctrine applies to "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Mothershed v. Justs. of Supreme Ct.*, 410 F.3d 602, 606 (9th Cir. 2005), *as amended on denial of reh'g* (July 21, 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).  To determine whether a plaintiff is bringing such a de facto appeal, the Court must "pay close attention to the *relief* sought

4

by the federal-court plaintiff." *Id.* (quotation omitted) (emphasis in original).  "It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 777–78 (quotation omitted).  As the Ninth Circuit has recently clarified, "*Rooker-Feldman* applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *See Miroth v. Cnty. of Trinity*, 136 F.4th 1141, 1151 (9th Cir. 2025) (quotation omitted) (emphasis in original).

Defendants suggest that this case is a de facto appeal because Plaintiff is seeking relief from the Sonoma Superior Court's judgment.  *See* Dkt. No. 18 at 21–22.  Although Defendants do not provide further detail, the Court assumes that Defendants' argument is based on Plaintiff's second cause of action:  Plaintiff's § 1983 claim for "excessive fines and penalties," in violation of the Eighth and Fourteenth Amendments. *See* Compl. at ¶¶ 109–112.  Plaintiff alleges generically that "[i]n doing the acts complained of herein, Defendants, and each of them, did impose, and continue to impose, excessive fines and penalties against [Plaintiff] . . . ." *See id.* at ¶ 110.  It is not clear what fines and penalties Plaintiff is referring to here, although elsewhere in the complaint she references the County's ongoing efforts to collect against her. *See id.* at ¶¶ 86, 91.  In her opposition brief, Plaintiff indicates that this case arises from incidents that took place only *after* the state court judgment, including the March 2023 incident in which a drone flew over her property and the February 2024 incident in which Defendant Martinez entered her property.  *See* Dkt. No. 25 at 18–19.  She does not, however, clarify what alleged conduct supports her excessive fines claim.

Nevertheless, even if Plaintiff's claim was based in part on the state court judgment, the Ninth Circuit has held that "[t]he existence of a prior state court judgment and a federal plaintiff seeking to relitigate a matter already litigated in state court [are] not circumstances sufficient to invoke *Rooker-Feldman* . . . ." *See Miroth*, 136 F.4th at 1149 (citing *Exxon Mobil*, 544 U.S. at 293).  Here, Plaintiff does not explicitly ask the Court to set aside the judgment in the state court case or reduce the amount of any fines or penalties assessed against her.  Instead, she requests injunctions enjoining County employees from entering her property and using drones to conduct

5

inspections of her property, monetary damages, and attorneys' fees.  *See* Compl. at 36–37 ("Relief Sought").  Despite Defendant's urging, therefore, this case does not appear to be a de facto appeal of the state court judgment, and the Court **DENIES** the motion on this basis.

### B.    Claim Preclusion

Defendants similarly argue that Plaintiffs' claims are barred by claim and issue preclusion because she is attempting "to change, challenge, or overturn the March 25, 2022 state court Judgment in which Plaintiff was represented by counsel."  *See* Dkt. No. 18 at 20–21.  Again, Defendants' argument appears to turn on Plaintiff's claim regarding "excessive fines."  *See* Compl. at ¶¶ 109–112.  Defendants state that "[t]he code violations and appropriateness/amount of civil penalties are final," as is the "conduct of the Code Enforcement employees leading to the Judgment . . . ."  Dkt. No. 18 at 21.

Res judicata, also known as claim preclusion, limits the ability of litigants to relitigate matters.  The doctrine "serves to promote judicial efficiency by preventing multiple lawsuits and to enable the parties to rely on the finality of adjudications."  *Dodd v. Hood River County*, 136 F.3d 1219, 1224–25 (9th Cir. 1998).  Res judicata applies where there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties."  *Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) (quotation omitted).  Where these factors are met, res judicata not only bars claims that were actually adjudicated in the prior action, but also all claims that could have been raised in that action.  *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).

Although Plaintiff asserts that claim and issue preclusion should not apply here, she does not address her "excessive fines" claim at all.  *See* Dkt. No. 25 at 18–19.  Instead, she suggests that the case only involves incidents arising after the state court judgment.  *See id.*  But neither the complaint nor Plaintiff's proposed amendments include allegations about any fines or penalties assessed against Plaintiff after the state court judgment.[2]  Given the lack of clarity in Plaintiff's claims, the Court is concerned that, at least as alleged, Plaintiff's "excessive fines" claim is based

---

[2] In support of her opposition to the motion to dismiss, Plaintiff attaches a "memo regarding series of proposed amendments" to the complaint.  *See* Dkt. No. 25 at 59–66.

1    on the damages award in the underlying state court judgment. This would seem to be barred by
2    res judicata, and Plaintiff offers no explanation to the contrary. The Court therefore **GRANTS** the
3    motion on this basis to the extent any of Plaintiff's claims are premised on the state court
4    judgment and any fines or penalties assessed there.

### C.    Statute of Limitations

Defendants next argue that Plaintiff's claims are largely barred by the applicable statute of limitations. *See* Dkt. No. 18 at 18–20. Claims arising under § 1983 adopt the forum state's statute of limitations for personal injury actions. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). The applicable limitations period in California is two years. *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007); *see also* Cal. Civ. Proc. Code § 335.1. Similarly, the statute of limitations for Plaintiff's claim for intentional infliction of emotional distress ("IIED") is two years. *See Pugliese v. Superior Ct.*, 146 Cal. App. 4th 1444, 1450 (Cal. Ct. App. 2007); *see also* Cal. Civ. Proc. Code § 335.1. And the statute of limitations for alleged violations of California's constitutional right of privacy is also two years. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598–99 (N.D. Cal. 2021) (rejecting argument that one-year statute of limitations applies) (collecting cases); *see also* Cal. Civ. Proc. Code § 335.1. Because Plaintiff filed the complaint on December 13, 2024, any § 1983, IIED, and California constitutional invasion of privacy claims based on events prior to December 13, 2022, are barred by the statute of limitations.

Defendants further note that the statute of limitations for trespass is three years. *See* Cal. Civ. Proc. Code § 338(b). Thus, because Plaintiff filed the complaint on December 13, 2024, any trespass claims based on events prior to December 13, 2021, are barred by the statute of limitations.

Plaintiff does not address any of Defendants' statute of limitations arguments. *See generally* Dkt. No. 25. Although elsewhere in her opposition brief Plaintiff has stated that she intends her case to be narrowly tailored to the March 2023 and February 2024 incidents on her property, *see* Dkt. No. 25 at 18–19, the complaint still references conduct outside the relevant statute of limitations, including a March 2020 "warrantless use of a drone to search the subject

7

property." *See* Compl. at ¶¶ 65, 88–89.  The Court accordingly **GRANTS** the motion as to any § 1983, IIED, and California constitutional invasion of privacy claims based on events prior to December 12, 2022, and any trespass claim based on events prior to December 13, 2021.

### D. Federal and State Claims

Plaintiff appears to acknowledge that her current complaint lacks sufficient information about the alleged incidents underlying her claims, and she seeks leave to amend to provide more detail about the March 23, 2023 drone incident and the February 12, 2024, incident in which Defendant Martinez entered her property.  *See* Dkt. No. 25 at 5–8; *see also id.* at 59–66.  The Court agrees that the complaint lacks sufficient factual support "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  For example, as to the alleged search of her property in March 2023, Plaintiff offers a single sentence that according to "records obtained from the County," her property was surveilled on March 23, 2023.  *See* Compl. at ¶ 92.  There is no information about the nature of the surveillance, any drone's proximity to Plaintiff's property, or who was involved in flying the drone.  In her opposition brief, Plaintiff suggests that the "event involved extremely low-lying [*sic*] drones in her residence area," Dkt. No. 25 at 4, but this is not alleged anywhere in the complaint.  Plaintiff's *Monell* claim similarly falls short.  Although the complaint includes information about the County's drone program, there are not sufficient factual allegations about how the program affected Plaintiff at all.  The Court therefore **GRANTS** the motion to dismiss as to all Plaintiff's claims.

#### i. Qualified Immunity

Even if Plaintiff were to amend the complaint to provide more detail about the alleged incidents, the individual defendants involved in any drone surveillance are likely entitled to qualified immunity.

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  The doctrine of qualified immunity attempts to balance two important and sometimes competing interests—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

8

1  perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation
2  omitted). The doctrine thus intends to account for the real–world demands on officials such as
3  police officers in order to allow them to act "swiftly and firmly" in situations where the rules
4  governing their actions are often "voluminous, ambiguous, and contradictory." *Mueller v. Auker*,
5  576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize that holding
6  officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult
7  decisions in challenging situations, thus disrupting the effective performance of their public
8  duties." *Id.*

9  To determine whether an officer is entitled to qualified immunity, the Court must consider
10 whether (1) the officer's conduct violated a constitutional right and (2) that right was clearly
11 established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts may choose which prong
12 to address first. *Id.* at 236. The Ninth Circuit has recognized that "[d]etermining claims of
13 qualified immunity at the motion-to-dismiss stage raises special problems for legal decision
14 making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). On a motion to dismiss, the
15 district court must consider "whether the complaint alleges sufficient facts, taken as true, to
16 support the claim that the officials' conduct violated clearly established constitutional rights of
17 which a reasonable officer would be aware in light of the specific context of the case." *Id.* at 1235
18 (quotation omitted).

19 Under the second prong of the qualified immunity inquiry, "[a]n officer 'cannot be said to
20 have violated a clearly established right unless the right's contours were sufficiently definite that
21 any reasonable official in [his] shoes would have understood that he was violating it.'" *City &*
22 *Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Plumhoff v. Rickard*, 572 U.S. 765,
23 778–79 (2014)). While this does not "require a case directly on point, [ ] existing precedent must
24 have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.
25 The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high
26 level of generality." *Id.* at 742.

27 Here, Plaintiff suggests that the right to be free from warrantless drone surveillance of her
28 property was clearly established by two Supreme Court cases: *Florida v. Jardines*, 569 U.S. 1

1  (2013) and *Kyllo v. United States*, 533 U.S. 27 (2001). *See* Dkt. No. 25 at 14–16. Plaintiff offers
2  little analysis of these cases, and significantly, neither case involved drones or even aerial
3  surveillance. *Accord Cupp v. Cnty. of Sonoma*, Case No. 23-CV-01007-JST, 2023 WL 6278877,
4  at *3–4 (N.D. Cal. Sept. 26, 2023). These cases, even taken together, thus offer little more than "a
5  high level of generality" about Fourth Amendment rights. *See al-Kidd*, 563 U.S. at 742. Plaintiff
6  also appears to suggest that the "diversion" of drones intended to search for "cannabis open fields"
7  to "low ground searches of residence[s] for code violations" should somehow alter the qualified
8  immunity analysis. But Plaintiff has not identified any cases in which courts have held that such
9  conduct violates the constitution, and the Court is aware of none.

### ii. California Government Tort Claims Act

Defendants also argue that as to Plaintiff's state law claims, she has failed to meet the prelitigation requirements under California Government Code § 910. *See* Dkt. No. 18 at 27–28. The California Government Tort Claims Act requires a plaintiff to file a claim with the public entity within one year of an alleged violation, and must include, among other things, "[t]he date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted." *See* Cal. Gov't Code §§ 900.4, 910, 911.2, 911.4. But Plaintiff merely asserts without any support that "[t]o the extent required to do so, [Plaintiff] has complied with all pre-suit notice requirements . . . ." *See* Compl. at ¶ 14. This is clearly insufficient, and in her opposition brief, Plaintiff offers no additional detail. *See* Dkt. No. 25 at 20.

### V. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. Dkt. No. 18. As explained in more detail above, none of Plaintiff's claims survive the motion to dismiss. And given the nature and volume of the deficiencies identified above, the Court is skeptical that Plaintiff could amend the complaint to state a claim for relief against Defendants. Nevertheless, at this stage in the litigation, the Court cannot say with certainty that amendment would be futile. Plaintiff may therefore file an amended complaint within 21 days of the date of this order provided counsel may do so consistent with its Rule 11 obligations. The Court will set a case management conference if necessary once it has reviewed Plaintiff's amended complaint and Defendants'

response. Plaintiff's application to appear remotely at the motion hearing is **TERMINATED AS MOOT**.[3] Dkt. No. 27.

**IT IS SO ORDERED.**

Dated: 7/14/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] Plaintiff's counsel has indicated that he "left the state of California for good, and moved to Mindanao Island, Philippines" approximately three years ago. Dkt. No. 27. Counsel suggests that he does not plan to attend any matters in this case in person unless the case goes to trial, given the prohibitive cost of travel. *See id.* The Court notes that in the notice of substitution of counsel, Mr. Franck listed an address in Folsom, California, and not the Philippines. *See* Dkt. No. 23. In any event, the Court routinely holds in-person proceedings in its cases and does not intend to provide counsel with any permanent and unqualified right to appear remotely at such hearings for his own convenience. Counsel should seriously consider whether under the circumstances he is able to adequately represent his client and litigate this case in the district where his client chose to bring it.