UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENI MAE MEYER,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SONOMA, et al.,<br><br>        Defendants. | Case No. 24-cv-09056-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Pending before the Court is Defendants' motion to dismiss the First Amended Complaint.[1] Dkt. No. 34. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

Plaintiff Keni Mae Meyer initially filed this case in December 2024. *See* Compl. The Court granted in part Defendants' first motion to dismiss, and none of Plaintiff's claims in the original complaint survived the motion to dismiss. *See* Dkt. No. 32. Out of an abundance of caution, the Court granted leave to amend, and Plaintiff accordingly filed an amended complaint. *See* FAC. Despite the opportunity to amend, Plaintiff's case remains largely the same.

Plaintiff continues to challenge, at least in part, Sonoma County's policies regarding the use of drones for aerial surveillance of private property. *See, e.g.*, FAC at ¶¶ 48–64, 81, 84, 101–

---

[1] Defendants include County of Sonoma employees Tennis Wick, Tyra Harrington, Todd Hoffman, Ryan Sharp, Jesse Cablk, and Cris Martinez. *See* Dkt. No. 33 ("FAC") at ¶¶ 10–16. The FAC appears to remove the County itself as a Defendant. *See id.* But Plaintiff elsewhere suggests that she is still pursuing claims against the County, and she has kept her *Monell* claim in the FAC. *See id.* at ¶¶ 134, 208–19; *see also* Dkt. No. 39 at 11–16.

103, 119, 169–70. Plaintiff suggests that the County began to surveil and trespass on her property without a warrant after the County issued multiple Sonoma County Code violations for her Sebastopol property. *See id.* at ¶¶ 68–77, 79–81, 84. Specifically, Plaintiff identifies two incidents:

- Plaintiff alleges that the County surveilled her property by drone "without a warrant, consent, or exigent circumstances" on March 23, 2023. *See id.* at ¶ 84. Plaintiff suggests that the drone photographs she has obtained appear to have been taken "at a very low level, well below 400 feet and probably more like 20 feet." *See, e.g.*, *id.* at ¶ 172.

- Plaintiff alleges that Defendant Cris Martinez, an officer with Sonoma County's Animal Services, drove onto her property without permission on February 14, 2024. *See id.* at ¶¶ 16, 85, 189–201. According to Plaintiff, Defendant Martinez was "casing" her property and entered through the security gate in his vehicle when Plaintiff opened the gate to let another guest onto the property. *See id.* at ¶¶ 85, 190. Plaintiff alleges that Defendant Martinez "badgered and harassed" her and refused to leave the property. *Id.* at ¶ 86. Plaintiff contends that Defendant Martinez walked near her garage, which was open, and "looked into the garage area for approximately 45 seconds." *See id.* at ¶ 190. According to Plaintiff, he also stopped in front of the house, "which has very large windows," and "took a moment to look into those windows in the front part of her house."[2] *See id.* at ¶¶ 197–98.

---

[2] Although Plaintiff describes other incidents, *see* FAC at ¶¶ 136–160, she appears to acknowledge that they are barred by the statute of limitations, *see id.* at ¶¶ 158–59. The Court similarly limited Plaintiff's claims based on the statute of limitations. *See* Dkt. No. 32 at 7–8. For clarity, the Court confirms that the only incidents properly before the Court at this time are the March 2023 and February 2024 incidents that Plaintiff identified.

Based on these allegations, Plaintiff brings claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment's prohibition of unreasonable searches and seizures and for municipal liability under *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978); for violations of California's right to privacy under Article I, Section 1 of the California Constitution; as well as common law claims for trespass and intentional infliction of emotional distress. *See id.* at ¶¶ 202–240. Defendants have once again moved to dismiss the complaint. Dkt. No. 34.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III.   DISCUSSION

Defendants argue that Plaintiff still has not alleged a plausible claim against any of them, and that regardless, the individual Defendants are entitled to qualified immunity. *See* Dkt. No. 34

at 16–27. The Court agrees that Plaintiff's amended complaint remains deficient.[3]

### A. Drone Surveillance Incident (March 2023)

Plaintiff continues to allege that her property was surveilled by drone without a warrant on March 23, 2023. *See* FAC at ¶¶ 84, 162, 168, 172, 205. She provides several photos of this alleged surveillance.[4] *See id.* at ¶¶ 84, 108–09, 175, & Exs. E-1, E-2. Plaintiff states that she no longer is pursuing any state law claims based on this drone incident. *See id.* at ¶¶ 1, 126–27; *see also* Dkt. No. 39 at 6.

#### i. Individual Liability

As before, however, there is no information about the circumstances of the surveillance or who was involved in flying the drone. She suggests that the photographs indicate that the drone must have been flying extremely low near her residence. But even a cursory review of the photographs indicate that they were taken at a distance, at a significant height, and from outside the boundary of Plaintiff's property. The FAC thus fails to support a claim against any individual Defendants based on the March 2023 incident.

The Court previously suggested, and now finds, that any individual defendants involved in the drone surveillance are also entitled to qualified immunity based on Plaintiff's allegations. *See* Dkt. No. 32 at 8–10. Plaintiff attempts to sidestep the question of qualified immunity by citing cases, both in the FAC and in her opposition to the motion to dismiss. *See* FAC at ¶¶ 90–97, 180–82; Dkt. No. 39 at 3–4. She asserts that these cases establish that "the defendants were on notice that conducting a search of the curtilage area of a home with a drone without a warrant was

---

[3] Both Plaintiff and Defendants ask the Court to take judicial notice of various court-related documents. *See* Dkt. No. 35; Dkt. No. 39 at 23–25. As before, the Court takes judicial notice of (1) the fact that these cases and documents were filed, and (2) of any judicial findings contained in them. *See* Fed. R. Evid. 201(b) (allowing judicial notice of facts "not subject to reasonable dispute" that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"); *see also United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (explaining that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"). However, the Court does not find that consideration of these documents alters its analysis as detailed below.
[4] Plaintiff also includes a photograph that she acknowledges is undated and was included as a trial exhibit in the case against her in February 2022. *See id.* at ¶ 108, 175–76, & Ex. E-3. This offers no insight into the March 2023 incident, and is outside the statute of limitations.

1  prohibited, and that no exception to the warrant requirement applies." *See* Dkt. No. 39 at 3.
2  Plaintiff provides no analysis of these cases, and the Court continues to disagree with Plaintiff's
3  conclusory assertions.  The Court incorporates its prior analysis here, though it briefly addresses
4  Plaintiff's argument below.  *See* Dkt. No. 32 at 8–10.

5          To determine whether an officer is entitled to qualified immunity, the Court must consider
6  whether (1) the officer's conduct violated a constitutional right and (2) that right was clearly
7  established at the time of the incident.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Courts
8  may choose which prong to address first.  *Id.* at 236.  The Ninth Circuit has recognized that
9  "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special
10 problems for legal decision making."  *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018).  On a
11 motion to dismiss, the district court must consider "whether the complaint alleges sufficient facts,
12 taken as true, to support the claim that the officials' conduct violated clearly established
13 constitutional rights of which a reasonable officer would be aware in light of the specific context
14 of the case."  *Id.* at 1235 (quotation omitted).

15         Under the second prong of the qualified immunity inquiry, "[a]n officer 'cannot be said to
16 have violated a clearly established right unless the right's contours were sufficiently definite that
17 any reasonable official in [his] shoes would have understood that he was violating it.'"  *City &*
18 *Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Plumhoff v. Rickard*, 572 U.S. 765,
19 778–79 (2014)).  While this does not "require a case directly on point, [ ] existing precedent must
20 have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S.
21 731, 741 (2011).  The Supreme Court has "repeatedly told courts . . . not to define clearly
22 established law at a high level of generality."  *Id.* at 742.

23         None of Plaintiff's cited cases establish that the right to be free from the drone surveillance
24 alleged was clearly established at the time of the March 2023 incident.  To the contrary, Plaintiff
25 acknowledges that "there are no published cases on point regarding drone use . . . ." Dkt. No. 39
26 at 8.  However, she suggests that the right to be free from warrantless drone surveillance of her
27 property was still clearly established by cases discussing "a search of the curtilage area of a
28 home."  *See id.*  The Court disagrees.

The Court already addressed two of Plaintiff's cases in its prior order: *Florida v. Jardines*, 569 U.S. 1 (2013), and *Kyllo v. United States*, 533 U.S. 27 (2001). *See* Dkt. No. 32 at 9–10. Plaintiff still "offers little analysis of these cases, and significantly, neither case involved drones or even aerial surveillance." *See id.* at 10. *Jardines* involved the use of a drug-sniffing dog around the homeowner's porch, whose positive alert for narcotics served as the basis for a search warrant. *See Jardines*, 569 U.S. at 3. The Supreme Court concluded that the officers improperly gathered information "by physically entering and occupying" the curtilage of the house. *Id.* at 5–9; *see also Payton v. New York*, 445 U.S. 573, 583–90 (1980) (addressing warrantless entry into home for felony arrest). No such physical intrusion occurred here. *Kyllo* involved the use of a thermal-imaging device on a public street, but aimed at a private home. *Kyllo*, 533 U.S. at 34. The Supreme Court concluded that this constituted an improper search, but contrasted the use of new technology to search inside someone's home with using it to search other areas such as the curtilage and "uncovered portions of residences." *See id.* at 34–37. Again, this case does not place the unconstitutionality of the alleged drone surveillance "beyond debate." *See al-Kidd*, 563 U.S. at 741; *cf. Florida v. Riley*, 488 U.S. 445, 447–51 (1989) (finding aerial surveillance of interior of greenhouse by helicopter flying at lawful altitude above home did not constitute unlawful search).

Plaintiff's additional cases are similarly inapposite. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, for example, involved whether qualified immunity was properly denied based on the seizure of items with "indicia of Hells Angels affiliation" and the shooting of dogs when executing a warrant at various residences. 402 F3d 962, 971–76 (9th Cir. 2005). And two of the other cases she cites are from outside this Circuit and involved physical intrusion into homes. *See United States v. Allen* 813 F.3d 76, 80–89 (2d Cir. 2016) (defendant-appellant standing at threshold inside his home at time of warrantless arrest); *United States v Almeida-Perez*, 549 F.3d 1162, 1169–72 (8th Cir. 2008) (addressing apparent authority and scope of permission to enter home for search). These cases, even taken together, still offer only "a high level of generality" about Fourth Amendment rights in the context presented by this case. *See al-Kidd*, 563 U.S. at 742.

6

        **ii.**    ***Monell* Claim**

Plaintiff's *Monell* claim also falls short. Pursuant to *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658 (1978), "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, to plausibly state a claim for municipal liability under *Monell*, a plaintiff must allege unconstitutional conduct attributable to "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). In other words, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quotation omitted). At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *See AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quotation omitted).

Although the FAC includes information about the County's drone program, there are not sufficient factual allegations about how the program affected Plaintiff or how in practice it violated federal law. Like Plaintiff's argument against qualified immunity, she simply concludes without any analysis that the March 2023 drone surveillance was an unconstitutional search of her property. *See* Dkt. No. 39 at 9–11. And although Plaintiff repeatedly points to the March 2023 incident in her complaint, even as alleged it is not clear that this incident—as opposed to an earlier 2020 incident outside the statute of limitations—was conducted pursuant to any County policy. *See* FAC at ¶ 57 ("On information and belief, the *March 27, 2020* warrantless use of a drone to search the subject property was conducted by Defendants Hoffman and Cablk, acting pursuant to the County's drone policy . . . .") (emphasis added); *see also id.* at ¶¶ 104–05, 108–09, & Ex. E-3 (regarding a drone photo used as an exhibit during a 2022 trial against Plaintiff regarding code violations). Plaintiff may disagree with the County's use of drones, but that is not enough to state a claim here.[5] Neither may Plaintiff rely on allegations or analysis from other cases, which she

---

[5] The Court notes that in the FAC Plaintiff states that "[t]he drone claim is an ongoing problem, with drones buzzing about Plaintiff's property." *See* FAC at ¶ 119. However, Plaintiff does not

7

quotes in both the FAC and her opposition brief. *See id.* at 11–16. That some cases involving the County's drone policy may have survived a motion to dismiss does not excuse Plaintiff from pleading her own case.

The Court therefore **GRANTS** the motion to dismiss as to all Plaintiff's claims related to the March 2023 incident.

### B. Defendant Martinez Incident (February 2024)

Plaintiff's remaining claims involve Defendant Martinez allegedly trespassing and conducting an illegal search on Plaintiff's property in February 2024. *See* FAC at ¶¶ 16, 85, 189–201. As noted above, Plaintiff alleges that Defendant Martinez waited to enter her property when Plaintiff opened a security gate to let another guest in. *See id.* at ¶¶ 85, 190. And after driving "20 feet before her house," he got out of his car, "looked into the garage area for approximately 45 seconds" and "took a moment to look into [the] windows in the front part of her house." *See id.* at ¶¶ 190, 197–98. Even as alleged, therefore, Defendant Martinez entered through an open gate and looked briefly at aspects of the property in plain view. Even setting aside the open gate, Plaintiff also appears to acknowledge that Defendant Martinez could have entered the property for "a legitimate animal control inspection of the premises." *See id.* at ¶ 196; *see also id.* at ¶ 195 (suggesting that Defendant Martinez could have searched the corral on the property, but didn't). And she alleges that while present, Defendant Martinez proffered this as a reason for his visit, stating that "he was there because none of Ms. Meyer's dogs were licensed with the County" and he believed she was "operating an illegal, unpermitted kennel," and he was checking on the health of a horse. *See id.* at ¶ 201. Plaintiff repeatedly contends that Defendant Martinez's conduct still violated state and federal law, but she only provides conclusory assertions and a bare recitation of the elements of her claims. *See, e.g.*, Dkt. No. 39 at 18–22. This is insufficient. In short, Plaintiff still does not allege conduct that gives rise to any claim against Defendant Martinez. *Cf. United States v. Perea-Rey*, 680 F.3d 1179, 1187–88 (9th Cir. 2012) ("[I]t remains permissible for

---

describe any of these other incidents. It is also not clear whether Plaintiff still resides at the Sebastopol residence or in Sonoma County at all. Defendants, for their part, suggest that Plaintiff has been evicted. *See* Dkt. No. 34 at 10.

officers to approach a home to contact the inhabitants.").[6]

The Court therefore **GRANTS** the motion to dismiss the claims related to the February 2024 incident.

## IV. CONCLUSION

The Court **GRANTS** the motion to dismiss. Dkt. No. 34. Plaintiff has had ample opportunity to amend the complaint and has failed to cure the deficiencies that the Court previously identified. It seems apparent that Plaintiff disagrees with the County's ongoing use of drones, but her policy disagreement is not enough to state a claim for relief. She also has failed to grapple meaningfully with the relevant case law. The Court therefore **DISMISSES** the case against Defendants without leave to amend. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to pro se plaintiffs.") (quotations omitted); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)). The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff, and to close the case.

**IT IS SO ORDERED.**

Dated: 12/30/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[6] To the extent that Plaintiff is asserting federal claims against Defendant Martinez, the Court further finds that he is entitled to qualified immunity based on Plaintiff's allegations. Again, Plaintiff alleges that Defendant Martinez entered the property through an open gate and approached the front of the house where he briefly spoke with Plaintiff. Plaintiff does not cite, and the Court is not aware of, any cases that would place the unconstitutionality of such conduct "beyond debate." *See al-Kidd*, 563 U.S. at 741.

9